UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

**ODEMARIS QUIROS,**

             **Plaintiff,**

-vs-                                             Case No. 2:11-cv-243-FtM-29DNF

**MICHAEL ASTRUE**
**COMMISSIONER OF SOCIAL**
**SECURITY,**

             **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

      This matter comes before the Court on Plaintiff Odemaris Quiros' Complaint (Doc. #1), filed on April 28, 2011, seeking review of the final decision of the Commissioner of the Social Security (Commissioner) denying Plaintiff's claim for Supplemental Security Income. Plaintiff filed her Memorandum of Law in support of the Complaint (Doc. #16) on October 7, 2011. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number). The Commissioner filed the Memorandum of Law in support of the Commissioner's decision (Doc. #17) on October 24, 2011. Thus, the case is now ripe for review.

      The Court has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge, the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case. For the reasons set forth herein, it is respectfully

recommended that the decision of the Commissioner be **reversed and remanded** pursuant to 42 U.S.C. §405(g).

**I. Social Security Act Eligibility, Procedural History, and Standard of Review**

**A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404,1511.

**B. Procedural History**

On July 1, 2008, Plaintiff filed an application for Supplemental Security Income ("SSI"), alleging disability beginning April 1, 2006. (Tr. 92-98). Her claim was initially denied on September 8, 2008. (Tr. 36).[1] Upon reconsideration on October 30, 2008 her claim was denied. (Tr. 46-47). On November 12, 2010, a video hearing was held before Administrative Law Judge ("ALJ") Ronald J. Thomas. (Tr. 21-33). Plaintiff appeared in Fort Myers, Florida, and the ALJ presided over the hearing from New Haven, Connecticut. (Tr. 21-33). The ALJ's decision, dated December 28, 2010, denied Plaintiff's request for Supplemental Security Income. (Tr. 7-16). The Appeals Council denied Plaintiff's Request for Review on March 31, 2011. (Tr. 1-3). Therefore, the decision of the ALJ is final.

---

1. In the ALJ's decision, he indicated that the application was filed on July 1, 2008 and denied on July 1, 2008. (Tr. 7). This second date is incorrect.

**C. Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Comm'r, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L. Ed. 2d 842 (1971); McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations[2] (20 C.F.R. §§ 404.1520(a), 404.920(a)). The Commissioner's findings of fact are conclusive if supported by substantial evidence (42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at 2 (citing Foote v. Chater, 67 F.3d 1553, 1560

---

2. The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:
    Step 1. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
    Step 2. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.
    Step 3. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, the next question must be resolved.
    Step 4. Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.
    Step 5. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

(11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835 (11th Cir. 1982)); Richardson, 402 U.S. 389 at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d 1553 at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F.3d at 1240 n.8; Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

**II. Review of Facts**

**A. Background Facts**

On the date of the ALJ's decision, Plaintiff was 38 years old. (Tr. 15). Plaintiff told the ALJ and a consultative examiner that she graduated high school (Tr. 25, 308) but she told her treating doctor she only attended school until the ninth grade. (Tr. 227). Plaintiff previously worked as an office worker from 2003 until 2004, and as a homemaker/caregiver from October 2005 until April 2006. (Tr. 121).

Plaintiff alleges she became totally disabled on April 1, 2006 due to anxiety and panic attacks. (Tr. 120). Plaintiff claims she wants to sleep all of the time, cannot concentrate, has headaches, and

does not want to leave the house. (Tr. 120). Plaintiff claims she hears voices sometimes twice a week and she sees things that are not there. (Tr. 30-31). Plaintiff states medication helps her condition, but that she cannot work because of dizziness, sleepiness, and being with other people. (Tr. 32).

**B. The ALJ's Findings**

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since July 1, 2008, the application date. (Tr. 9).

At step two, the ALJ found that Plaintiff has severe impairments including: 1) osteoarthritis; 2) hypertension; 3) depression; and 4) anxiety. (Tr. 9). The ALJ made these findings after a review of the medical evidence, and determined that these conditions impose more than a minimal effect in the Plaintiff's ability to perform the basic demands of competitive remunerative work-related tasks. (Tr. 9).

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § § 416.920(d), 416.925 and 416.926). (Tr. 9). The ALJ determined that: 1) while Plaintiff may have back pain, the evidence does not establish compromise of a nerve root, motor loss, or inability to ambulate effectively to meet the severity required by Listing 1.04; 2) Plaintiff's heart impairment is managed pharmacologically and does not meet Listing 4.04(C); and 3) Plaintiff's mental impairments individually and in combination do not meet or equal the criteria of Listing 12.04 and/or 12.06. (Tr. 9-10).

In determining that Plaintiff's mental impairments do not meet or equal the necessary criteria, the ALJ considered whether the mental impairments result in at least two of the following four criteria:

marked restriction of activities of daily living; marked difficulties in maintaining social function; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (Tr. 10). The ALJ found with regard to the restriction of activities of daily living that Plaintiff is not significantly restricted and she is able to take care of personal hygiene, light household chores, tend to her teenage children's needs, and travel as necessary. (Tr. 10). The ALJ concluded that such activities of daily living show a mild degree of limitation at most. (Tr. 10). The ALJ found with regard to social functioning that while Plaintiff has a slight tendency to be out of the public directly, she is able to respond appropriately and has no difficulty interacting with other people and thus demonstrates only a mild limitation. (Tr. 10). The ALJ found Plaintiff had difficulties in maintaining concentration, persistence and pace, and that Plaintiff has moderate difficulty in her ability to concentrate, but not to the degree that it precludes unskilled or very low-end semi-skilled work. (Tr. 10). Finally, the ALJ found one or two episodes with regard to deterioration or decompensation in work. (Tr. 11).

At step four, the ALJ found Plaintiff has the residual functional capacity to perform medium work in a supervised, low stress environment, except that she is only able to occasionally bend, stoop, twist, squat, kneel, crawl, climb, and balance. (Tr. 11, Finding No. 4). Non-exertionally the ALJ found Plaintiff is limited to a supervised, low stress environment defined as one requiring few decisions. (Tr. 11).

At step five, the ALJ found that the Plaintiff was not able to perform her past relevant work. (Tr. 15). The ALJ determined that the job of secretary and home health aide exceed the Plaintiff's residual functional capacity, and recognized that the burden then shifts to the Commissioner to show

the existence of other work which exists in significant numbers in the national economy for a person with the residual functional capacity identified for the Plaintiff. (Tr. 15).

The ALJ also found that the Plaintiff was 36 years old on the date of the application and is defined as a younger individual. (Tr. 15). Further, the Plaintiff is not able to communicate in English and is illiterate in English. (Tr. 15). The ALJ determined that the transferability of job skill was not relevant because the Plaintiff's past work was unskilled. (Tr. 15). The ALJ determined that considering the Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. (Tr. 15). The ALJ concluded by finding that Plaintiff is not disabled. (Tr. 16).

**C. Plaintiff's Medical History**

Plaintiff alleges her disability began April 2006, but the first evidence of any treatment was in March 2008, when Plaintiff attended an outpatient group facilitated by Yiara Blanco, Psy.D., at Hill Health Center/Behavioral Health Division. (Tr. 268). The Plaintiff continued treatment at Hill Health Center/Behavioral Health Division from April 2, 2008 through October 8, 2008. (Tr. 242-268). On April 23, 2008, Yiara S. Blanco, Psy.D. diagnosed the Plaintiff with PTSD diagnosis and a Major Depressive Disorder, recurrent, severe without psychotic features. (Tr. 264). Dr. Blanco found the Plaintiff experienced flashbacks on a daily basis and visual hallucinations. (Tr. 264). In May 2008, Plaintiff told Dr. Blanco that her depressogenic thoughts "have diminished and do not affect her daily activities." (Tr. 260). In June, Plaintiff reported that she had, "improved mood during the past two weeks" because "having her oldest son and oldest daughter with her has been a source of happiness." (Tr. 256).

In July 2008, the Plaintiff went to Fair Haven Health Center three times. (Tr. 198-210). Although she went to Fair Haven for other medical ailments, she was diagnosed with depression and anxiety. (Tr. 206).

In August 2008, Plaintiff returned to Hill Health Center and told Dr. Blanco she relapsed and consumed at least 10 beers in a 4 hour period. (Tr. 252). Dr. Blanco noted that Plaintiff was "teary and upset" by her relapse and Dr. Blanco found a trigger to this relapse was that Plaintiff's nephew had been taken in by police. (Tr. 252). Later that same month, Plaintiff reported an improved mood, medication adherence and denied having any hallucinations or suicidal ideations. (Tr. 249).

On September 6, 2008, Plaintiff had a psychological consultative exam at the Connecticut Disability Determination Services with Jesus Lago, M.D. (Tr. 226). Plaintiff was referred to Dr. Lago for depression following a breakup from her boyfriend. (Tr. 226). During this exam, Plaintiff told Dr. Lago she had not used alcohol in the past two years. (Tr. 226). Plaintiff arrived by bus and told Dr. Lago her sleep, appetite and energy had been low, but Dr. Lago made note Plaintiff "appear[ed] well-rested and well-nourished." (Tr. 226). In taking note of Plaintiff's mental status, Dr. Lago wrote that Plaintiff was very respectful and engageable; her speech was slow, quiet and monotone and her mood was depressed. (Tr. 227). Dr. Lago concluded the Plaintiff had major depression, recurrent, mild to moderate and noted that with proper psychiatric care and follow up her condition should improve. (Tr. 227). Dr. Lago also found Plaintiff may benefit from a domestic violence group because she had been harassed for the past year by an ex-boyfriend. (Tr. 227).

On September 8, 2008, Adrian Brown, Ph.D., a file reviewing individual, performed a Psychiatric Review Technique at the request of the Social Security Administration. (Tr. 228-241). Dr. Brown found the Plaintiff to have non-severe medical impairments and Affective Disorders. (Tr. 228).

Dr. Brown determined that the Plaintiff had depressive syndrome, with sleep disturbance, decreased energy and found a medically determinable impairment of "Mdd, mild-moderate Dr. Lago." (Tr. 231). Dr. Brown also found that the Plaintiff has "anxiety do, sxs likely present but not noted by Dr. Lago." (Tr. 233). Dr. Brown based his finding on the Plaintiff being anxious during the interview, and "recent traumatic stressor." (Tr. 233). Dr. Brown concluded that the Plaintiff had mild restriction in activities of daily living, mild restrictions in maintaining social functioning, and mild restriction in maintaining concentration, persistence, or pace. (Tr. 238). Dr. Brown found the Plaintiff's allegations of mental anxiety and panic attacks to be partially credible and found her energy level could be low and that she may have a fear of seeing her ex-boyfriend which may limit her leaving the house. Dr. Brown found that the Plaintiff is able "to sustain simple work activity." (Tr. 240).

In October 2008, the Plaintiff went to the Family Health Center because she complained of pain for the past two weeks in her breast. (Tr. 269). She was treated by Vlatko Salopek, M.D. Dr. Salopek's assessment included the lump in Plaintiff's breast as well as an adjustment disorder with anxiety and depressed mood. (Tr. 269).

In November 2008, the Plaintiff was hospitalized for atypical chest pain and anxiety disorder. (Tr. 377). Plaintiff said she had no medications. (Tr. 377). Plaintiff was discharged four days later because her pulmonary and cardiology consult were both negative, her electrocardiogram was normal, and she was fit to return to her regular activities. (Tr. 377). After Plaintiff was discharged, she went to Rafael Garcia, M.D., for a followup. (Tr. 324). Dr. Garcia reported that Plaintiff asked him to fill out a disability form based on her psychiatric condition within the first two minutes. (Tr. 324). Dr. Garcia also reported that she was very symptomatic and had been off her medications. (Tr. 324).

In December 2008, Robert Steele, M.D. a file reviewing physician reported that the Plaintiff alleged she was disabled due to mental issues and a lump in her breast. (Tr. 276). However the doctor reported that the lump was benign and there was no evidence of cancer. (Tr. 276). Later in December, Plaintiff was referred to Martha Putney, Ph.D., a file reviewing individual for a psychiatric review. (Tr. 277). Dr. Putney reported that Plaintiff had mild difficulties in activities of daily living, social functioning and in maintaining concentration. (Tr. 287). Dr. Putney also reported no episodes of decompensation. (Tr. 287).

In January 2009, Plaintiff had a diagnostic interview at home conducted by Liz Brown, LCSW. (Tr. 296). The diagnosis was that Plaintiff had major depression that was severe and recurrent and that she exhibited feelings of hopelessness, sadness, feeling overwhelmed, panic attacks, anxiety, visual and auditory hallucinations and difficulty sleeping with limited insight. (Tr. 297). Plaintiff went to see Dr. Garcia again and complained about the lump in her breast, anxiety and depressed moods. (Tr. 318). Dr. Garcia reported that she asked him to fill out a disability form for the second time because of her depression. (Tr. 318). Dr. Garcia told Plaintiff to give her forms to a psychiatrist. (Tr. 318).

In February 2009, Plaintiff underwent a functional assessment test at Lee Mental Health Center. (Tr. 354). Plaintiff was referred by Luz Zuluaga of Access because Plaintiff complained of depression, medical problems, poor coping skills and being on medications she claimed did not work. (Tr. 354). Plaintiff was found to have a slight problem with depression, a moderate problem with anxiety, less than a slight problem with thought processes and a slight to moderate problem with traumatic stress. (Tr. 356).

In early March 2009, Plaintiff was hospitalized at Lee Mental Health Center. (Tr. 355). Plaintiff discharged herself claiming she was satisfied that her medication was helping her and that even though

she had a near crisis previously she felt comfortable with the help she was receiving. (Tr. 354-55). At this point Plaintiff was being treated by Dr. Lopez who provided her with weekly home visits for individual therapy. (Tr. 355).

In July 2009, Plaintiff was hospitalized again at Lee Mental Health Center for three days. (Tr. 331). Plaintiff was under the care of Pedro Lazaro, M.D. and was diagnosed with schizoaffective disorder, general anxiety disorder and insomnia. (Tr. 331). When she was discharged, Plaintiff reported feeling better and denied having any hallucinations, delusions, or suicidal/homicidal ideations. (Tr. 331). Plaintiff reported she was "happy" and that her boyfriend was moving in with her. (Tr. 331).

In June 2010, Mara Fiorentino, M.D., a psychiatrist, completed a medical verification form from the Career and Service Centers of Southwest Florida and reported that Plaintiff was unable to work because her schizoaffective disorder was a permanent condition. (Tr. 374). Dr. Fiorentino reported that Plaintiff's mood was sad, tearful, was hearing voices and seeing shadows. (Tr. 379). Her appearance was disheveled, her attitude was guarded, her behavior was psychomoto-retardation, her speech slow, her mood depressed and anxious, her affect was restricted, blunted, and labile, and her thought process was blocked. (Tr. p. 379). Plaintiff's prescription for Prozac was increased. (Tr. 380).

In August 2010, Plaintiff went to lee Mental Health Center and was diagnosed with schizoaffective disorder. (Tr. 445-446). The Plaintiff was noted to have psychomoto-retardation, slow speech, and restricted affect. (Tr. 445).

In September 2010, Plaintiff was hospitalized again at Lee Memorial Health Center for a suicide attempt. (Tr. 427). Plaintiff had been off her medications for seven to eight days because she could not get her medications approved through her insurance. (Tr. 427).

**III Specific Issues and Conclusion of Law**

Plaintiff raises three issues on appeal. As stated by Plaintiff, they are: (1) the ALJ erred by failing to complete a function-by-function analysis of Plaintiff's RFC in the decision; (2) the ALJ erred in not requiring vocational expert testimony at the hearing; and (3) the ALJ erred in not including all of Plaintiff's moderate limitations in concentration, persistence and pace in a hypothetical question posed to a vocational expert.

**A. Whether The ALJ Failed to Complete a Function-by-Function Analysis of Plaintiff's RFC in the Decision.**

Plaintiff argues that the ALJ erred by not accounting for the fact Plaintiff has moderate limitations in concentration, persistence and pace in his residual functional capacity ("RFC") finding. The Commissioner argues that the ALJ did take into account Plaintiff's moderate difficulties in concentration, persistence and pace when he limited Plaintiff to unskilled work. (Tr. 10).

At the hearing level, the ALJ has the responsibility of assessing a Plaintiff's RFC. See 20 C.F.R. §416.946(c). The assessment of a Plaintiff's RFC is based on an evaluation of all the relevant evidence, including the medical evidence and Plaintiff's statements concerning her own abilities and limitations on a function-by-function basis. See 20 C.F.R. §416.945(a), (3); Social Security Ruling ("SSR") p. 96-8p. The ALJ must state with some measure of clarity the grounds for his decision. Winschel v. Comm'r of Soc. Sec., 631 F. 3d 1176, 1179-80 (11th Cir. 2011).

In this case the ALJ took into account Plaintiff's moderate limitations finding, "that the claimant has moderate difficulties in these areas such that she has an occasional interference in the ability to concentrate, but not to the degree that it precludes unskilled or very low-end semi-skilled work." (Tr. 10). The ALJ addressed and took into account each of Plaintiff's doctors' medical findings

in reaching his determination. (Tr. 13-14). In fact, in February of 2009, Plaintiff underwent a functional assessment which found that she had a slight problem with depression, a moderate problem with anxiety, less than a slight problem with thought processes, and a slight to moderate problem with traumatic stress. (Tr. 356). The ALJ considered Plaintiff's difficulties in concentration, persistence and pace when he limited Plaintiff to unskilled work. (Tr. 10).

The ALJ sufficiently accounted for Plaintiff's limitations by basing his determinations on specific medical findings as well as Plaintiff's subjective complaints. Further, the ALJ's opinion did not conflict with any medical source opinions.

However, the ALJ's opinion is unclear as to what level of work Plaintiff is able to perform. The ALJ finds that Plaintiff has moderate difficulties but not to the degree that it precludes unskilled or very low-end semi-skilled work. (Tr. 10). Then the ALJ finds that Plaintiff has the RFC to perform **medium** work with specific exceptions. (Tr. 11, Finding No. 4). The ALJ finds that, "the additional limitations have little or no effect on the occupational base of unskilled **medium** work." (Tr. 16). In the next paragraph, however, the ALJ finds, "[w]hile the additional limitations preclude the performance of full range of **light** exertional work, the non-exertional limitations leave the occupational base intact." (Tr. 16). Therefore, the Court will remand this case for the ALJ to clarify the RFC and apply a function-by-function analysis of the clarified RFC.

**B. Whether the ALJ erred in not requiring Vocational Expert testimony at the Hearing.**

Plaintiff argues that the ALJ committed legal error by not requiring a vocational expert to testify at the hearing. The Commissioner argues that the ALJ properly relied on the grids because Plaintiff's vocational characteristics coincided with the factors in the grids.

There are two avenues by which the ALJ may determine whether the Plaintiff has the ability to adjust to work in the national economy: either by using the Medical Vocational Guidelines ("grids") or by testimony from a vocational expert. Phillips v. Barnhart, 357 F.3d 1232, 1239-40. An ALJ cannot rely exclusively on grids when Plaintiff is unable to perform a full range of work at a given residual functional level or when a Plaintiff has non-exertional impairments that "significantly limit [her] basic work skills." Id. at 1242. "Significantly limit basic work skills" means that the limitations prohibit a plaintiff from performing a "wide range" of work at a given level. Id. at 1243.

If Plaintiff cannot perform a full range of work at a given level or has non-exertional impairments that prohibit a wide range of work at a given level, the ALJ may use the grids as a framework, but must also introduce independent evidence, preferably through a vocational expert's testimony, of the existence of jobs in the national economy that Plaintiff can perform. Wolfe v. Chater, 86 F.3d 1072, 1077-78 (11th Cir. 1996).

In this case Plaintiff's medical records indicate she has been diagnosed with thoracic scoliosis and essential hypertension. (Tr. 386-421, 423-430). The ALJ found that these severe impairments in combination with her other non-exertional impairments produce limitations consistent with medium exertional level work with occasional postural limitations. (Tr. 14).

The ALJ found Plaintiff has the RFC to perform medium work and then proceeds to list exceptions to this ability, including that she is "only able to occasionally bend, stoop, twist, squat, kneel, crawl, climb, and balance." (Tr. 11). The ALJ found further non-exertional limitations including that Plaintiff is "limited to a supervised, low stress environment[s] defined as one requiring few decisions." (Tr. 11). Since exclusive reliance on the grids is inappropriate when Plaintiff is unable to perform a full range of work at a given residual functional level, Allen v. Sullivan, 880 F.2d 1200,

1202 (11th Cir. 1989), and the ALJ determined that Plaintiff was limited in the work she could perform at the range of medium work, the ALJ erred in not having the testimony of a vocational expert.

The ALJ found that Plaintiff had the following severe impairments: osteoarthritis, hypertension, depression, and anxiety. (Tr. 20). The ALJ found that "because these conditions impose more than a minimal effect in the claimant's ability to perform the basic demands of competitive renumerative work-related tasks, they are found to be severe medically determinable impairments." (Tr. 9). Since exclusive reliance on the grids is also inappropriate when a Plaintiff has limitations that significantly limit work skills, the ALJ erred in not having the testimony of a vocational expert. Because the ALJ erred in not having the testimony of a vocational expert, this case should be remanded.

**C. Whether the ALJ erred in not including all of the Plaintiff's restrictions, including Plaintiff's moderate limitations in concentration, persistence and pace in a hypothetical question posed to a vocational expert.**

In this case, no vocational expert was called to testify, therefore no hypothetical question was posed. To the extent that a vocational expert was required the above objections and remand render this objection moot.

## IV. Conclusion

The ALJ erred in not clarifying the appropriate RFC for Plaintiff, and in failing to obtain the testimony of a vocational expert. Therefore, the Court respectfully recommends that this case be reversed and remanded to the Commissioner for further proceedings.

Accordingly, it is respectfully **RECOMMENDED** that:

The Clerk of the Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's decision and **REMANDING** this matter to the ALJ with instructions to: (a) obtain the testimony of a vocational expert to determine the types of jobs that Plaintiff can perform based on her limitations; and (b) clarify Plaintiff's residual functional capacity as to whether it is limited to medium work or light work.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida this __2nd__ day of April, 2012.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: Parties of record